UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BAYER HEALTHCARE LLC,

Plaintiff,

v.

SERGEANT'S PET CARE PRODUCTS, INC.,

Defendant.

13-cv-2501 (JSR)

ECF CASE

---

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**<u>MOTION FOR A PRELIMINARY INJUNCTION</u>**

David H. Bernstein (dhbernstein@debevoise.com)
Michael Schaper (mschaper@debevoise.com)
Christopher J. Hamilton (cjhamilton@debevoise.com)
Zheng Wang (zwang@debevoise.com)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6696 (telephone)
(212) 521-7696 (facsimile)

Attorneys for Plaintiff Bayer HealthCare LLC

Dated: New York, New York
May 17, 2013

U S DISTRICT COURT SDNY
2013 MAY 17 P 10: 10
RECEIVED

# TABLE OF CONTENTS

Page

I. Sergeant's Establishment Claims Are Unsubstantiated. .......... 2

II. Sergeant's Own Studies Demonstrate That Its 99% Claim Is False. .......... 5

III. Bayer's Survey Evidence Demonstrates That the Fiproguard Commercial Is Misleading .......... 6

A. Sergeant's Criticisms of Bayer's Survey Evidence Are Unfounded. .......... 6

B. The Bubble Imagery Is Not Mere Puffery. .......... 9

IV. Sergeant's Other Arguments Are Unavailing. .......... 9

CONCLUSION .......... 12

## TABLE OF AUTHORITIES

**CASES**

*Alpo Petfoods, Inc. v. Ralston Purina Co.*, 720 F. Supp. 194 (D.D.C. 1989), *rev'd on other grounds*, 913 F.2d 958 (D.C. Cir. 1990) ....3

*Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252 (5th Cir. 1980) ....7

*Big Dog Motorcycles LLC v. Big Dog Holdings, Inc.*, 402 F. Supp. 2d 1312 (D. Kan. 2005) ....7

*Glaxo-Warner Lambert OTC GP v. Johnson & Johnson Merck*, 935 F. Supp. 327 (S.D.N.Y 1996) ....1, 2

*Goya Foods, Inc. v. Condal Distributors, Inc.*, 732 F. Supp. 453 (S.D.N.Y. 1990) ....8

*Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons*, 365 F. Supp. 707 (S.D.N.Y. 1973), *modified on other grounds*, 523 F.2d 1331 (2d Cir. 1975) ....8

*Haagen-Dazs, Inc. v. Frusen Gladje Ltd.*, 493 F. Supp. 73 (S.D.N.Y. 1980) ....10

*Healthpoint, Ltd. v. Allen Pharm., LLC*, No. SA-07-CA-0526-XR, 2008 WL 728333 (W.D.Tex. March 18, 2008) ....2

*Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160 (3d Cir. 2001) ....10

*McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.*, 938 F.2d 1544 (2d Cir. 1991) ....2, 5

*Merck Eprova AG v. Brookstone Pharm., LLC*, No. 09-9684 (RJS) [Dkt. No. 32], order (S.D.N.Y. Dec. 9, 2009) ....11

*Mutual of Omaha Ins. Co. v. Novak*, 836 F.2d 397 (8th Cir. 1987) ....8

*North Am. Olive Oil Ass'n v. Kangadis Food Inc.*, No. 13 Civ. 868(JSR), 2013 WL 1777774 (S.D.N.Y. April 25, 2013) ....12

*Pharmacia Corp. v. Alcon Labs., Inc.*, 201 F. Supp. 2d 335 (D.N.J. 2002) ....7

*Proctor & Gamble Co. v. Ultreo, Inc.*, 574 F. Supp. 2d 339 (S.D.N.Y. 2008) ....10

*Reckitt Benckiser Inc. v. Motomco Ltd.*, 760 F. Supp. 2d 446, 454 (S.D.N.Y. 2011). ....11

*S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232 (2d Cir. 2001) ....9

*S.C. Johnson & Son, Inc. v. Clorox Co.*, 930 F. Supp. 753 (E.D.N.Y. 1996) ....3

*Stokely-Van Camp, Inc. v. Coca-Cola Co.*, 646 F. Supp. 2d 510 (S.D.N.Y. 2009) ....10

**OTHER AUTHORITIES**

*Farnam Pet Products (Adams Fleas & Tick Spot On For Dogs)*, NAD Case No. 5516 (October 23, 2012) .......... 5

Plaintiff Bayer HealthCare LLC ("Bayer") respectfully submits this reply memorandum of law in support of its motion for a preliminary injunction against Sergeant's Pet Care Products, Inc.'s ("Sergeant's") false advertising campaign claiming (among other things) that Sergeant's flea and tick preventives are more effective than Bayer's flea and tick products.

Bayer's opening papers demonstrated that Sergeant's ads should be enjoined for three key reasons: (1) Sergeant's studies do not support its establishment claims; (2) Sergeant's studies affirmatively demonstrate the falsity of its other claims; and (3) Bayer has submitted strong survey evidence showing that the Fiproguard Commercial misleads consumers.[1]

Sergeant's largely avoids engaging Bayer on the merits of its arguments. Instead, Sergeant's opposition rests on the fundamental – and incorrect – premise that Bayer's motion is "little more than an effort by Bayer to prevent Sergeant's from making claims expressly approved by the EPA…" Sergeant's Memorandum of Law in Opposition to Plaintiff's Motion for a Preliminary Injunction ("Opp. Br.") at 1. On that basis, Sergeant's argues, the Court should not evaluate on its own the advertising claims at issue. In fact, not one of the challenged claims is an EPA-allowed label claim.[2] Although companies are free to advertise the efficacy of their products beyond allowed label claims, as well as make comparative efficacy claims, these claims must be substantiated. False and unsubstantiated claims, like Sergeant's, are properly challenged in federal court. The fact that unrelated label claims were allowed by a regulator is beside the point. The EPA allows or rejects label claims; it does not review advertising claims prior to release. Davis Reply Decl. ¶ 31; *see also*, *Glaxo Warner-Lambert OTC G.P v. Johnson &*

---

1 Defined terms from the Memorandum of Law In Support of Plaintiff's Motion for a Preliminary Injunction ("Opening Br.") are used throughout.

2 The challenged advertising claim "starts dying in minutes" is the only one close to an EPA-allowed label claim ("starts killing in minutes").

*Johnson Merck Consumer Pharms. Co.*, 935 F. Supp. 327, 330 (S.D.N.Y 1996) ("[T]he FDA does not have jurisdiction over advertising. Rather, the FTC and the [c]ourts patrol this area."); *Healthpoint, Ltd. v. Allen Pharm., LLC*, No. SA-07-CA-0526-XR, 2008 WL 728333, at *10 (W.D. Tex. March 18, 2008) (distinguishing "respecting the FDA's primary jurisdiction to determine in the first instance whether a drug is lawfully marketed" from "a Lanham Act claim that a false statement has been made about a product").

For these reasons, Sergeant's cannot rely on the EPA process as a crutch. It must defend its advertising claims on the merits. It cannot do so. Bayer is therefore likely to succeed on its claims. Because Bayer also makes the required showing of irreparable harm, the Court should preliminarily enjoin Sergeant's false advertising.

## I. **Sergeant's Establishment Claims Are Unsubstantiated.**

Sergeant's concedes that its comparative claims are establishment claims.[3] Opp. Br. at 8. As Bayer established in its opening papers, no reliable, reproducible studies show that (1) Sergeant's products prevent more flea bites than K9 Advantix; or (2) Sergeant's products are generally more effective than Bayer's products.

*Redacted*

[3] In its opening brief, Bayer inadvertently misdescribed the *McNeil – P.C.C., Inc. v. Bristol-Myers Squibb Co.*, 938 F.2d 1544 (2d Cir. 1991) in a parenthetical. While the citation supports the point for which Bayer actually cited it, the parenthetical stated incorrectly that the burden shifted to defendant to show support for its claim. In fact, the Court held that plaintiff could meet its burden by showing that defendant's studies were unreliable. *Id.* at 1549

Sergeant's also fails to confront the case law that confirms that establishment claims (or advertising claims generally) cannot be supported by cherry-picking favorable results. *S.C. Johnson & Son, Inc. v. Clorox Co.*, 930 F. Supp. 753, 783-84 (E.D.N.Y. 1996) (single unreliable laboratory test could not substantiate claim where defendant's own field tests showed claim to be false and defendant failed to consider a test that directly contradicted its claim); *Alpo Petfoods, Inc. v. Ralston Purina Co.*, 720 F. Supp. 194, 208-09 (D.D.C. 1989), *rev'd on other grounds*, 913 F.2d 958 (D.C. Cir. 1990) (selective use of data and exclusion of trials that contradicted defendant's claim supported finding of false advertising).

Even looking only at the one study Sergeant's cites, it is unreliable for the reasons set out in Bayer's opening papers. Sergeant's again relies on the EPA process, Redacted

Redacted But the EPA's allowance of that monadic claim does not insulate Sergeant's from a challenge to the study methodology as the basis for supporting a comparative advertising claim.[4] In fact, the flea biting study was horribly flawed.

Redacted

Redacted

---

4 Nor does it protect Sergeant's misleading claim that Pronyl leads to "fewer bites for … your family." Fiproguard and Pronyl are indicated only for use on dogs.

Redacted

Similarly, Sergeant's does not have studies supporting the claim that its products are generally more effective and faster acting than K9 Advantix. Redacted

Redacted

Redacted Sergeant's does not and cannot defend against this criticism.

Lastly, Sergeant's "dying in just minutes" claim is not supported by reliable studies.[5]

Redacted

Redacted As noted above, courts strike down advertising claims that are contradicted by the advertiser's own studies.

Redacted

Redacted

---

5 Sergeant's fails to rebut that this claim, which in some contexts is delivered by a veterinarian in a white coat, is an establishment claim. Opening Br. at 15 n.3.

Redacted

Here, Sergeant's notes that the EPA allowed a "starts killing in 5 minutes" claim based on this same study.[6] This should not be the end of the inquiry when it comes to protecting consumers from false advertising messages. As the National Advertising Division has found, the EPA is focused on "representations regarding safety and efficacy," not on "all of the messages reasonably conveyed by an advertisement." *Farnam Pet Products (Adams Flea & Tick Spot On For Dogs)*, NAD Case No. 5516 (October 23, 2012) (attached as Ex. G to the Declaration of David H. Bernstein). In some circumstances, where an advertiser's studies (even if the basis for EPA label claims) are fatally flawed, NAD strikes down the advertising claim. *See* Bernstein Decl. Exs. C, F, G. Courts should similarly insist that advertising claims be supported by scientifically valid evidence.

## II. Sergeant's Own Studies Demonstrate That Its 99% Claim Is False.

Sergeant's makes much of the fact that Bayer does not have its own studies comparing Bayer's products to Sergeant's products. This fact is unsurprising given that Sergeant's only began running the television commercial in March of this year and, as Sergeant's concedes, flea and tick studies can take many months to plan and execute. Van Auken Decl. ¶¶ 34-37. In any event, Bayer is entitled to rely on Sergeant's studies of Sergeant's product to show that Sergeant's advertising claims are literally false. *McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.*, 938 F.2d 1544, 1549 (2d Cir. 1991) ("[E]ven if the tests were not directly referred to in connection with [defendant's] superiority claim, [plaintiff] still could have relied on and

---

6 The "dying in minutes" claim is the only challenged advertising claim which Sergeant's can plausibly claim is similar to an allowed label claim.

analyzed data generated by [defendant] as scientific proof that the challenged advertisement was false."). Bayer is not required to allow Sergeant's to go forward with advertising that its own studies demonstrate to be false until Bayer has time to develop studies of its own.

As Bayer showed in its moving brief, and as Dr. Davis explained in his report, Sergeant's own studies show that its product does not achieve 99% efficacy against fleas and ticks in 4 hours after application and maintain that level of efficacy for the entire month. Davis Report ¶ 75. Even looking at favorable study results, Redacted Redacted Nouvel Decl. ¶ 55. This claim is demonstrably false and should be enjoined.

## III. Bayer's Survey Evidence Demonstrates That the Fiproguard Commercial Is Misleading.

### A. Sergeant's Criticisms of Bayer's Survey Evidence Are Unfounded.

Bayer's expert witness, Mr. Hal Poret, has submitted a survey report demonstrating that the Fiproguard Commercial is likely to mislead consumers. Respondents to Mr. Poret's survey were very clear that the bubble imagery in that ad led them to believe that Fiproguard repels or kills fleas before contact.[8] About 31% of respondents who viewed the Fiproguard Commercial clearly referenced the bubble graphics from the commercial. Poret Decl., Ex. A. at 17. For example, respondents who were misled into believing that Fiproguard repels or kills before contact said:

---

[7] As discussed in the opening papers, Redacted Redacted

[8] Although Mr. Poret's survey did not confirm that the bubble imagery communicated the false message that Fiproguard provides immediate 100% protection against fleas because both his test and control cells showed a high level of confusion, *see* Poret Decl., Ex. A at 13, Bayer argues that the Fiproguard Commercial necessarily implies that false message. Opening Br. at 20.

- "because the bubble stopped the fleas before they in contact with dog in the commercial and the got fleas and was not protected" *Id.* at 17.
- "It shows that the bubble shield was protecting the dog before the fleas arrived." *Id.* at 18.
- "because they show that the dogs have a shield around them so this stops them from getting on the dog period." *Id.*
- "the bubble that is around the [dog] shows that the fleas and tics wont get a chance to get to your dog." *Id.*
- "when the fleas were trying to attck the dogs the bubbles stop it from getting to the dog" *Id.*
- "because when the fleas were coming at the dog they were being killed" *Id.*
- "Well it showed a force field around the dog so it couldn't even touch the dog." *Id.*
- "when they showed that shield over the pet killing them before it reached it" *Id.*
- "Because the bubble in the commercial represents how it works against fleas." *Id.*
- "It's so funny because I saw the little fleas coming down in the airplanes and the dog was inside the bubble like they couldn't penetrate to him." *Id.*

Sixty-four respondents gave answers along those lines. *Id.* at 17.

Mr. Poret has submitted a Reply Declaration refuting the criticisms of his study by Sergeant's survey expert, as well as additional criticisms in Sergeant's brief. *See* Poret Reply Decl. In short, these criticisms pick at the edges of Mr. Poret's work – challenging minor aspects of the study universe[9] and instructions to respondents[10] – but do not undermine the key finding of

---

[9] Mr. Poret's survey universe of prospective purchasers of the product class, not actual purchasers of the specific product being advertised, was appropriate and unlike the criticized surveys in cases cited by Sergeant's. *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 264 (5th Cir. 1980) (survey conducted in cities where defendant's product was not sold); *Big Dog Motorcycles L.L.C. v. Big Dog Holdings, Inc.*, 402 F. Supp. 2d 1312, 1334 (D. Kan. 2005) (survey tested all likely purchasers of T-shirts and caps, but should have been limited to likely purchasers of T-shirts and caps and motorcycle dealerships); *Pharmacia Corp. v. Alcon Labs., Inc.*, 201 F. Supp. 2d 335, 363 (D.N.J. 2002) (universe for prescription glaucoma drug should have included optometrists as well as opthalmologists).

[10] Sergeant's mischaracterizes Mr. Poret's instructions, such as by taking the language "please answer all of our questions" out of context, without noting that the sentence is immediately followed by "However, if for any question, you have no opinion, please indicate so. Please do not guess." Poret Decl. Ex. A at 46.

confusion about Fiproguard Max working before fleas and ticks come in contact with a pet or the powerful verbatim responses reflecting consumer confusion.

Sergeant's also asserts that the 14% net confusion level here does not meet the requirements of "judicial precedent," Opp. Br. at 17, but does not address the precedent cited in Bayer's moving brief showing confusion levels of 14% or below as sufficient to demonstrate actual confusion. *Mutual of Omaha Ins. Co. v. Novak*, 836 F.2d 397, 400 (8th Cir. 1987) (10%); *Goya Foods, Inc. v. Condal Distributors, Inc.*, 732 F. Supp. 453, 457 & n.7 (S.D.N.Y. 1990) (10%); *Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons*, 365 F. Supp. 707, 716 (S.D.N.Y. 1973), *modified on other grounds*, 523 F.2d 1331 (2d Cir. 1975) (8.5%).[11] Particularly in the context of a survey that is very conservatively controlled, the fact that 14% of consumers expressed confusion, when coupled with the verbatims highlighting the deceptive nature of the bubble imagery, is powerful evidence of likely confusion. Moreover, as Mr. Poret explains, the actual level of confusion may be about 7% higher than that, because a number of respondents who saw the control commercial expressed confusion based on aspects of the Fiproguard Commercial that relate to the bubble depiction but were not removed in his control stimulus. Poret Decl., Ex. A at 23-25.

---

[11] Sergeant's also takes Mr. Poret's comments from prior testimony out of context to argue that 14% net confusion does not meet Mr. Poret's own standards. Opp. Br. at 17. The portion of that testimony submitted to the Court by Sergeant's actually shows Mr. Poret testifying that "there is no absolute threshold, but that 15 percent is a rough ballpark … [C]ourts have generally dismissed results that were below 10 percent as probably being too low and results of 15 percent or higher have generally been accepted, so it is not as if anybody said 15 percent is the magic number." Baker Decl. Ex. C. Given the very conservative control here, 14 percent is sufficient to show confusion.

### B. The Bubble Imagery Is Not Mere Puffery.

Perhaps because it recognizes that the force field bubble around the dog is literally false, Sergeant's argues that the bubble imagery is mere puffery. Opp. Br. at 17-18. It is true, of course, that the bubble is just an animation (as are the fleas piloting fighter jets), but that does not render the imagery puffery. Sergeant's argument confuses the fact that the ad's animation is fanciful with its being obvious, exaggerated hyperbole. The depiction of a leaking bag was found to be literally false in *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 239 (2d Cir. 2001), despite the fact that the bag contained a fanciful talking goldfish. *Id.* at 236. Here Mr. Poret's survey demonstrates that the bubble imagery actually communicates the false message that Fiproguard repels or kills fleas before contact. Although the bubble imagery is fanciful, that false message is believable to many consumers, as Mr. Poret's survey demonstrates.[12]

## IV. Sergeant's Other Arguments Are Unavailing.

Sergeant's other arguments are without merit. Briefly:

1. *Likelihood of Deception:* Sergeant's concedes that "likely consumer deception may be presumed with respect to literally false claims." Opp. Br. at 19. Bayer has argued that all of the claims at issue on this motion are literally false. The only claim of implied falsity Bayer has argued on this motion is the use of the bubble imagery in the Fiproguard Commercial, for which it has submitted survey evidence of deception (although Bayer believes that imagery to be false by necessary implication).

---

[12] Sergeant relies on a comparison of its misleading commercial to an S.C. Johnson ad for OFF! as a similar example of "puffery", Opp. Br. at 18n.6. However, unlike Sergeant's products, OFF! purportedly emanates vapors that repel mosquitoes before contact. Davis Reply Decl. ¶¶ 34-35.

2. *Likelihood of Injury:* Sergeant's concedes that "likely injury may be assumed with respect to literally false advertisements that reference a competitor by name." Opp. Br. 19. This is the case for the Fiproguard Commercial, the Fiproguard Website, and the Fiproguard Coupon, all of which are literally false and reference Bayer's K9 Advantix® II product by name. Opening Br. at 7-9. In any case, this element of Bayer's false advertising claim is satisfied by the evidence of irreparable harm Bayer submitted in support of its motion. Opening Br. at 24-27.

3. *Unclean Hands:* Sergeant's points to three ads as purported evidence that Bayer has "unclean hands." The first is a 2003 commercial featuring a bubble, which Bayer discussed in its Opening Brief.[13] Opening Br. at 23-24. The second is a current Bayer ad stating that K9 Advantix® II "starts killing fleas within 10 minutes." This claim is different from Sergeant's false "starts dying in just minutes" claim, because the Bayer claim is accompanied by a disclaimer ("Three days post-treatment on previously untreated dogs") and Bayer has studies that adequately support this claim. Van Brunt Reply Decl. ¶ 4; Davis Reply Decl. ¶¶ 22-28. The third purportedly "unclean" ad cited by Sergeant's is not even an ad by Bayer, the plaintiff in this case. Rather, it is a website ad by a foreign affiliate of Bayer, marketing a product called Advantix, which has a different formulation than Bayer's K9 Advantix® II product, and which is not sold in the United States. Van Brunt Reply Decl. ¶ 5. In any case, that ad does not feature a bubble or any other ad claim Bayer seeks to enjoin on this motion. Baker Decl. Ex. A-4.

---

13 The cases cited by Sergeant's involved ongoing or far more recent behavior by the plaintiffs. *Stokely-Van Camp, Inc. v. Coca-Cola Co.*, 646 F. Supp. 2d 510, 518-519 (S.D.N.Y. 2009); *Proctor & Gamble Co. v. Ultreo, Inc.*, 574 F. Supp. 2d 339 (S.D.N.Y. 2008); *Haagen-Dazs, Inc. v. Frusen Gladje Ltd.*, 493 F. Supp. 73, 76 (S.D.N.Y. 1980). Sergeant's effort to distinguish *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160 (3d Cir. 2001), is unavailing. In that case, defendant's current ads and plaintiff's prior ad both made false claims about "access" to certain hospitals, but the court rejected defendant's unclean hands defense because plaintiff's ad was two years old. *Id.* at 174. That case actually supports Bayer's position.

4. *Irreparable Harm:* Sergeant's argues that the prospective loss of goodwill, market share and brand reputation are not sufficient to establish the prospect of irreparable harm required for a preliminary injunction. Opp. Br. at 24-26. Mr. Van Brunt provided a detailed explanation of the harm to Bayer in his original Declaration, and reemphasizes those points in a Reply Declaration. Van Brunt Decl. ¶¶ 10-14; Van Brunt Reply Decl. ¶¶ 6-8. The *Merck Eprova AG v. Brookstone Pharm., LLC* order cited by Sergeant's involves circumstances not present here: Plaintiff in that case accused defendant of marketing its product as a "false generic." No. 09-9684 (RJS) [Dkt. No. 32], order at 10 (S.D.N.Y. Dec. 9, 2009). In that case, no irreparable harm was shown because plaintiff would be able to regain lost market share after the "false generic" was removed from the market. *Id.* Here, the Sergeant's products will not be removed from the market – only the false ads will be removed – so the absence of the product will not force consumers to switch back to K9 Advantix. To the contrary, even when the ad is off the air, consumers may well remember the false claims and remain loyal to Fiproguard or Pronyl, making the harm to Bayer truly irreparable. Further, and contrary to Sergeant's characterization of the law post-*eBay*, Bayer does not have to prove that it has already been permanently injured in order to obtain prospective injunctive relief, but only "(i) that the parties are competitors in the relevant market, and (ii) that there is a 'logical causal connection between the alleged false advertising and its own sales position.'" *Reckitt Benckiser Inc. v. Motomco Ltd.*, 760 F. Supp. 2d 446, 454 (S.D.N.Y. 2011). Bayer has made that showing.

5. *Delay:* Sergeant's claim that Bayer should have been aware of its false advertising as early as February 20, 2013, even if true, would not show unreasonable delay in bringing this motion. Bayer filed its Complaint in this matter on April 15, 2013, less than two months after February 20 and well within the timeframe of any of the cases cited by Sergeant's. *See* Opp. Br.

at 26-28. On April 17, Bayer's counsel asked the Court for permission to file a motion for preliminary injunction. Bayer's filing of that motion was delayed until May 6 so that Bayer's moving papers could take into account the studies produced by Sergeant's on May 1. *See North Am. Olive Oil Ass'n v. Kangadis Food Inc.*, No. 13 Civ. 868(JSR), 2013 WL 1777774, at *7 n.3 (S.D.N.Y. April 25, 2013) (finding that 6-7 month delay was not unreasonable where delay resulted from the preparation of an expert report that was "critical to the Court's resolution of [the preliminary injunction motion]") (Rakoff, J.). There was no unreasonable delay.

6. *Balance of Hardships:* Sergeant's final effort to avoid an injunction is to raise the straw man that an injunction will force it to recall its Fiproguard and Pronyl products. Opp. Br. at 29. As the Court knows well, that is not the relief Bayer is seeking, and Bayer is not challenging in this proceeding the specific claims on Sergeant's labeling. The only relief at issue here is with respect to Sergeant's advertisements. Sergeant's has articulated no other hardships it would suffer by being forced to stop running false advertisements that deceive consumers as to the efficacy of its products.

**CONCLUSION**

For all the reasons stated above and in Bayer's opening brief, Bayer respectfully requests that its motion for a preliminary injunction be granted.

Dated: New York, New York
May 17, 2013

Respectfully submitted,

DEBEVOISE & PLIMPTON LLP

By: ______________________

David H. Bernstein
(dhbernstein@debevoise.com)



23899233v06

Michael Schaper
(mschaper@debevoise.com)
Christopher J. Hamilton
(cjhamilton@debevoise.com)
Zheng Wang
(zwang@debevoise.com)
919 Third Avenue
New York, New York 10022
(212) 909-6000

*Attorneys for Plaintiff Bayer HealthCare LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BAYER HEALTHCARE LLC, Plaintiff, vs. SERGEANT'S PET CARE PRODUCTS, INC. Defendant. | 13-cv-2501 (JSR) ECF CASE |

**CERTIFICATE OF SERVICE**

I, Christopher J. Hamilton, associated with Debevoise & Plimpton LLP, attorneys for plaintiff herein, certify:

I am over eighteen (18) years of age. On the 17th day of May, 2013, I served copies of Bayer's Reply Memorandum of Law in Support of Plaintiff's Motion for a Preliminary Injunction, the Reply Declaration of Wendell L. Davis, D.V.M., and the Reply Declaration of Daniel Ennis, Ph.D., D.Sc., by electronic mail to counsel for the other parties to this action at the following addresses:

- PGarrity@sheppardmullin.com
- mmcgrath@sheppardmullin.com
- saberg@sheppardmullin.com
- tbaker@sheppardmullin.com

I also caused copies of the aforementioned documents to be served by hand delivery on the following day to the following address:

Paul Garrity, Esq.
Sheppard Mullin Richter & Hampton LLP
30 Rockefeller Plaza
New York, NY 10112-0015

Pursuant to 28 U.S.C. § 1746, I certify under the penalty of perjury that the foregoing is true and correct.

Executed on May 17, 2013.

Christopher J. Hamilton



23901114v01